# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                         Plaintiff,

    v.

RAY LEONARD MARPLE,

                         Defendant.

No. 24-03053-01-CR-S-MDH

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Teresa A. Moore, United States Attorney, and Patrick Carney, Assistant United States Attorney, and the defendant, Ray Leonard Marple ("the defendant"), represented by Joseph Passanise.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to the two-count Information, charging him under Count 1 with a violation of 18 U.S.C. § 1343, that is, wire fraud, and under Count 2 with a violation of 26 U.S.C. § 7206(1), that is, Making a False Federal Tax Return. The defendant also agrees to forfeit to the United States the property

described in the Forfeiture Allegation of the Information, that is, real property located at 1341 North Fremont Avenue, Springfield, Missouri, as more fully described in the Information, and a money judgment in the amount of $415,481.50. By entering into this plea agreement, the defendant admits that he knowingly or willfully committed these offenses, and is, in fact, guilty of these offenses.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offenses to which the defendant is pleading guilty are as follows:

A. The Defendant

At all times relevant, the defendant, RAYMOND LEONARD MARPLE (Marple) was a resident of Springfield, Greene County, located in the Western District of Missouri. In 1995, Marple graduated from University of Arkansas, with a Bachelor of Science Degree in Accounting. In 1996, the state of Arkansas granted Marple a certificate and license as a CPA. He received the CPA certification and license in 2002 from the state of Missouri. Between 1995 and 1999, Marple worked as a controller in several manufacturing businesses. From 1999 to the current, Marple has been operating a CPA firm under the name "Ray L Marple CPA" in Springfield, Missouri. Marple prepares 200-250 personal and business tax returns annually.

B. Count 1 (Wire Fraud)

Overview of the V.L.N. Revocable Trust:
On or about November 30, 2016, an agreement was entered into between V.L.N., as the Grantor, and A.S., as Trustee, to create a Revocable Trust, known and designated as V.L.N. REVOCABLE TRUST. On or about January 4, 2017, the Trust Agreement was amended in the FIRST AMENDMENT TO THE REVOCABLE TRUST AGREEMENT OF V.L.N.

This agreement in part states:

> *Upon the death, resignation, or incapacity of [A.S.] as Trustee, and if all other persons subsequently and properly appointed by Grantor as the Trustee or Successor Trustee shall, for any reason, fail or cease to serve, then my accountant RAY MARPLE as Trustee, ...*

On or about January 19, 2017, A.S. signed a Resignation of Trustee, that stated, "on December 20, 2016, give written notice to the Grantor (through his legal counsel) of his voluntary resignation as Trustee of the Trust Agreement." This document further stated,

2

"that pursuant to Article VIII, Section B of the Trust Agreement, RAY MARPLE is named as successor trustee to serve for the benefit of the Grantor during his lifetime in accordance with the Trust Agreement and all applicable laws. This resignation shall be effective January 20, 2017."

On or about January 26, 2017, Defendant Marple signed an "Acknowledgment and Acceptance of Trusteeship for the Revocable Trust of," V.L.N.

Article IV, Death of Grantor, of the Trust Agreement provides instructions on how the trust assets are to be divided, administered, and distributed. Section E outlines the following instructions:

> *1. Five Thousand and 00/100 Dollars ($5,000.00) shall be distributed, outright, to Grantor's friends and caretakers, [T. AND J. M.], presently of Springfield, Missouri, or to the survivor of them, each month for six (6) total months following the death of the Grantor. In the event neither of them survives Grantor, then this bequest will lapse.*

> *2. After distribution of the foregoing bequest to [T. and/or J. M.], fifty percent (50%) of the remainder of the Trust Estate shall be held in trust for the benefit of Grantor's daughter, [H.R.], presently of Springfield, Missouri, as set forth below, and (50%) of the remainder of the Trust Estate shall be divided equally and help in trust for the benefit of Grantor's grandchildren, [M.B.], presently of Palmdale, California, [B.R.], presently of Springfield, Missouri, and [J.R.], presently of Springfield, Missouri. All bequests set forth herein shall be by representation.*

> *3. In the event a beneficiary named in subparagraphs 1 and 2 of this Paragraph E, Article IV, is deceased at the time of distribution leaving no surviving lineal descendants, then the share for such deceased beneficiary shall be added proportionately to the share of the other beneficiaries named in this Paragraph E, Article IV.*

> *4. In the event that all the beneficiaries named in this Paragraph E, Article IV, are deceased at the time of distribution, leaving no surviving lineal descendants, or if no other provision is made for distribution of the Trust Estate, then the balance of the Trust Estate, including all accumulated income, shall be distributed to the MASONIC YORK RITE TEMPLE ASSOCIATION, a Missouri non-profit corporation, or its successor in interest, for the benefit of SOLOMON LODGE NO. 271 located in or near SPRINGFIELD, MISSOURI.*

Article IX, Section C provides the following terms for compensation paid to a Trustee, who is not a beneficiary to the Trust Agreement:

3

*1. With respect to an individual Trustee who is not also a beneficiary under this Agreement, the Trustee shall be compensated in an amount, determined in each calendar year, equal to one-fourth (1/4) of one percent (1%) of the total value of the Trust Estate on the first day of the calendar year or, if later, on the day in the calendar year when the individual accepts trusteeship. The compensation should be pro-rated on a daily basis for the year in which the Trustee does not serve the entire year.*

*2. If the Trustee or Co-Trustees are also beneficiaries under this Agreement, he or they shall not receive additional compensation other than receipt of the inheritance contemplated herein;*

*3. Compensation to a corporate Trustee shall not exceed such amounts as are agreed from time to time between the corporate Trustee and the adult and otherwise competent beneficiaries of the Trust, or, in the absence of agreement, such amounts as are usually charged for the services in accordance with the fee schedule of the corporate Trustee in effect at the time services are rendered. Unless the corporate Trustee is actively participating in the management of real property or business held in the Trustee Estate, or the adult and otherwise competent beneficiaries of the Trust otherwise agree, the value of any interest in real property or in a closely held or family business which is part of the Trust Estate shall not be included in the determination of the compensation of the corporate Trustee;*

*4. In addition to compensation, the Trustee shall be entitled to reimbursement for reasonable expenses paid by the Trustee on behalf of the Trust.*

V.L.N. passed away on February 8, 2021. At the time of V.L.N.s' death to present, the Defendant was and remains the Trustee.

B.     Wire Fraud Theft Scheme

On or about May 11, 2017, a checking account, ending in number 2030, was opened at Commerce Bank in the name of "REV TRUST AGMT OF," V.L.N. Defendant is the only authorized signer on this bank account.

On or about August 11, 2020, a checking account, ending in number 0735, was opened at OakStar Bank in the name of V.L.N. "TRUST RAY L MARPLE TTEE". Defendant is the only authorized signer on this bank account.

From July 7, 2017, through May 3, 2023, said dates being approximate, Marple devised and executed a scheme to embezzle, steal, obtain by fraud and without authority, and knowingly converted to his own use funds from the V.L.N. Revocable Trust.

4

It was a part of this scheme that Marple caused account transfers and checks to be deposited into his CPA business and personal accounts at OakStar Bank, ending in 0362 and 354, respectively. All transactions at OakStar Bank are processed through the Federal Reserve and Jack Henry & Associates, which maintains servers in Branson, Missouri and Allen, Texas; each server maintains a copy of the data of the other server for redundancy purposes and alternate twice a year as the "primary" server for the processing of transactions, requiring such transactions to be processed through interstate wires.

Between July 7, 2017, and May 3, 2023, Marple transferred and knowingly converted to his own use, funds totaling approximately $432,981.50. These funds are summarized below:

| Transaction Type | Date | Check Number | Amount |
|---|---|---|---|
| Unknown | 7/7/2017 | 5011 | $ 7,495.00 |
| Unknown | 7/31/2017 | 5018 | $ 3,572.00 |
| | | | $ 11,067.00 |
| | | | |
| Check Deposited in OakStar #0362 | 1/31/2018 | 5071 | $ 4,076.00 |
| Transfer to OakStar #0362 | 2/15/2018 | | $ 10,000.00 |
| Transfer to OakStar #0362 | 3/14/2018 | | $ 2,000.00 |
| Transfer to OakStar #0362 | 6/22/2018 | | $ 4,000.00 |
| Check Deposited in OakStar #0362 | 6/22/2018 | 5110 | $ 4,000.00 |
| Transfer to OakStar #0362 | 7/11/2018 | | $ 1,000.00 |
| Transfer to OakStar #0362 | 7/17/2018 | | $ 1,000.00 |
| Transfer to OakStar #0362 | 7/20/2018 | | $ 1,000.00 |
| Transfer to OakStar #0362 | 8/14/2018 | | $ 1,000.00 |
| Transfer to OakStar #0354 | 8/30/2018 | | $ 7,500.00 |
| Check Deposited in OakStar #0362 | 8/30/2018 | 5126 | $ 1,000.00 |
| Check Deposited in OakStar #0362 | 9/27/2018 | 5143 | $ 1,000.00 |
| Transfer to OakStar #0362 | 10/5/2018 | | $ 500.00 |
| Check Deposited in OakStar #0362 | 10/19/2018 | 5156 | $ 1,000.00 |
| Check Deposited in OakStar #0354 | 10/23/2018 | 5158 | $ 3,000.00 |
| Transfer to OakStar #0362 | 11/9/2018 | | $ 1,000.00 |
| Transfer to OakStar #0354 | 11/9/2018 | | $ 500.00 |
| Transfer to OakStar #0354 | 11/13/2018 | | $ 500.00 |
| Transfer to OakStar #0362 | 11/14/2018 | | $ 20,000.00 |
| Transfer to OakStar #0354 | 11/14/2018 | | $ 1,000.00 |
| Transfer to OakStar #0362 | 11/19/2018 | | $ 5,000.00 |
| Check Deposited in OakStar #0362 | 12/7/2018 | 5007 | $ 15,000.00 |
| Check Deposited in OakStar #0362 | 12/20/2018 | 5175 | $ 1,000.00 |

5

| | | | $ | 86,076.00 |
|---|---|---|---|---|
| | | | | |
| Check Deposited in OakStar #0362 | 1/18/2019 | 5180 | $ | 3,276.00 |
| Transfer to OakStar #0362 | 2/6/2019 | | $ | 7,500.00 |
| Transfer to OakStar #0362 | 2/26/2019 | | $ | 5,000.00 |
| Check Deposited in OakStar #0362 | 5/17/2019 | 5193 | $ | 1,500.00 |
| Transfer to OakStar #0362 | 5/23/2019 | | $ | 5,000.00 |
| Check Deposited in OakStar #0362 | 6/15/2019 | 5201 | $ | 500.00 |
| Check Deposited in OakStar #0362 | 7/3/2019 | 5203 | $ | 500.00 |
| Check Deposited in OakStar #0362 | 7/11/2019 | 5206 | $ | 1,000.00 |
| Check Deposited in OakStar #0362 | 8/8/2019 | 5211 | $ | 1,500.00 |
| Transfer to OakStar #0354 | 9/23/2019 | | $ | 1,000.00 |
| Transfer to OakStar #0354 | 9/25/2019 | | $ | 500.00 |
| Check Deposited in OakStar #0362 | 9/26/2019 | 5315 | $ | 1,500.00 |
| Check Deposited in OakStar #0362 | 10/4/2019 | 5225 | $ | 1,500.00 |
| Check Deposited in OakStar #0362 | 11/26/2019 | 5248 | $ | 1,500.00 |
| Transfer to OakStar #0362 | 12/5/2019 | | $ | 421.15 |
| Check Deposited in OakStar #0362 | 12/11/2019 | 5255 | $ | 1,500.00 |
| Check Deposited in OakStar #0362 | 12/24/2019 | 5265 | $ | 1,500.00 |
| Check Deposited in OakStar #0362 | 12/31/2019 | 5270 | $ | 3,000.00 |
| | | | $ | 38,197.15 |
| | | | | |
| Check Deposited in OakStar #0362 | 1/8/2020 | 5272 | $ | 2,000.00 |
| Check Deposited in OakStar #0362 | 1/17/2020 | 5275 | $ | 3,000.00 |
| Check Deposited in OakStar #0362 | 2/3/2020 | 5283 | $ | 1,500.00 |
| Check Deposited in OakStar #0362 | 7/17/2020 | 5309 | $ | 1,500.00 |
| Check Deposited in OakStar #0362 | 8/10/2020 | 5315 | $ | 1,500.00 |
| Check Deposited in OakStar #0362 | 9/14/2020 | 1007 | $ | 1,500.00 |
| Check Deposited in OakStar #0362 | 10/6/2020 | 1013 | $ | 1,500.00 |
| Check Deposited in OakStar #0362 | 11/10/2020 | 1021 | $ | 1,500.00 |
| Check Deposited in OakStar #0362 | 12/4/2020 | 1025 | $ | 1,500.00 |
| | | | $ | 15,500.00 |
| | | | | |
| Check Deposited in OakStar #0362 | 1/6/2021 | 1030 | $ | 1,500.00 |
| Check Deposited in OakStar #0362 | 2/2/2021 | 1040 | $ | 1,500.00 |
| Transfer to OakStar #0354 | 8/30/2021 | | $ | 7,500.00 |
| Check Deposited in OakStar #0362 | 10/4/2021 | 1049 | $ | 2,241.35 |
| Check Deposited in OakStar #0362 | 10/22/2021 | 1050 | $ | 10,000.00 |
| Check Deposited in OakStar #0362 | 10/25/2021 | 1051 | $ | 10,000.00 |
| Check Deposited in OakStar #0362 | 11/29/2021 | 1054 | $ | 20,000.00 |

6

| | | | | |
|---|---|---|---|---|
| | | | $ | 52,741.35 |
| | | | | |
| Check Deposited in OakStar #0362 | 1/5/2022 | 1058 | $ | 10,000.00 |
| Unknown (check drawn on OakStar) | 6/18/2022 | 1070 | $ | 1,500.00 |
| Check Deposited in OakStar #0362 | 7/15/2022 | 1074 | $ | 150,000.00 |
| Check Deposited in OakStar #0362 | 10/21/2022 | 1081 | $ | 10,000.00 |
| | | | $ | 171,500.00 |
| | | | | |
| Transfer to OakStar #0362 | 1/3/2023 | | $ | 5,000.00 |
| Transfer to OakStar #0354 | 1/4/2023 | | $ | 5,000.00 |
| Transfer to OakStar #0354 | 1/10/2023 | | $ | 2,000.00 |
| Transfer to OakStar #0362 | 1/10/2023 | | $ | 3,000.00 |
| Transfer to OakStar #0362 | 1/20/2023 | | $ | 5,000.00 |
| Transfer to OakStar #0354 | 1/30/2023 | | $ | 5,000.00 |
| Transfer to OakStar #0362 | 2/2/2023 | | $ | 2,500.00 |
| Transfer to OakStar #0354 | 2/7/2023 | | $ | 2,000.00 |
| Transfer to OakStar #0362 | 2/7/2023 | | $ | 3,000.00 |
| Transfer to OakStar #0354 | 2/10/2023 | | $ | 2,500.00 |
| Transfer to OakStar #0362 | 2/10/2023 | | $ | 2,500.00 |
| Transfer to OakStar #0362 | 2/10/2023 | | $ | 1,000.00 |
| Transfer to OakStar #0362 | 2/22/2023 | | $ | 1,000.00 |
| Transfer to OakStar #0354 | 2/23/2023 | | $ | 2,000.00 |
| Transfer to OakStar #0354 | 2/28/2023 | | $ | 1,500.00 |
| Transfer to OakStar #0362 | 3/14/2023 | | $ | 3,000.00 |
| ATM Cash Withdrawal | 3/15/2023 | | $ | 200.00 |
| ATM Cash Withdrawal | 3/15/2023 | | $ | 200.00 |
| Transfer to OakStar #0362 | 3/21/2023 | | $ | 1,500.00 |
| Transfer to OakStar #0354 | 3/24/2023 | | $ | 1,000.00 |
| Transfer to OakStar #0362 | 3/28/2023 | | $ | 1,000.00 |
| Transfer to OakStar #0354 | 3/29/2023 | | $ | 1,000.00 |
| Transfer to OakStar #0354 | 3/31/2023 | | $ | 500.00 |
| Transfer to OakStar #0362 | 3/31/2023 | | $ | 1,000.00 |
| Transfer to OakStar #0362 | 4/10/2023 | | $ | 3,500.00 |
| Transfer to OakStar #0354 | 4/27/2023 | | $ | 1,000.00 |
| Transfer to OakStar #0362 | 5/3/2023 | | $ | 1,000.00 |
| | | | $ | 57,900.00 |
| | | | | |
| | | | | |
| | | TOTAL | $ 432,981.50 | |

7

Based on the calculations laid out in the Trust Agreement, Marple would have been entitled to trustee fees less than $2,500 annually, or less than $17,500 total for the seven years (2017-2023) in this agreement. This amount is significantly less than the $432,981.50 Marple withdrew from the account for personal purposes. Thus, Marple devised and executed a scheme to embezzle, steal, and obtain by fraud at least $415,481.50 from the V.L.N. Trust.

Specifically, on or about July 15, 2022, the defendant deposited check number 1074, drawn on V.L.N. REVOCABLE TRUST account ending in 0735 at OakStar Bank, into his CPA business checking account, Ray L Marple, CPA, ending in 0362, held at OakStar Bank, in Springfield, Missouri. The deposit resulted in an interstate wire communication, because it was processed and transmitted electronically to Jack Henry & Associates, Inc., in Monett, Missouri and Allen, Texas.

The defendant, RAY LEONARD MARPLE, acknowledges and admits that he devised and intended to devise the above-described scheme to defraud the V.L.N. Revocable Trust and the Trust beneficiaries, and that on or about July 15, 2022, in Springfield, Missouri, for the purpose of executing the above-described scheme to defraud, he caused to be transmitted by means of wire communications in interstate commerce writings, signs, signals and pictures, namely the images and representations on check number 1074, drawn on V.L.N. Revocable Trust's OakStar Bank account ending in 0735, in the amount of one hundred and fifty dollars ($150,000) which was transmitted across state lines, in violation of Title 18, United States Code, Section 1343.

The defendant, RAY LEONARD MARPLE, further acknowledges and admits that monies and proceeds obtained from this scheme were used to purchase real property located at 1341 North Fremont Avenue, Springfield, Missouri.

Loss amount and restitution. The defendant acknowledges that for the purpose of calculating his offense level under the U.S. Sentencing Guidelines, the loss amount is $415,481.50.

C.      Count 2 (Making a False Tax Return)

The defendant, RAY LEONARD MARPLE, acknowledges and admits that on October 15, 2019, in Springfield, Missouri, he willfully made and subscribed, and electronically filed a U.S. Individual Income Tax Return, IRS Form 1040, for the calendar year 2018, which was verified by a written declaration that it was made under the penalties of perjury and which he did not believe to be true and correct as to every material matter. The defendant's U.S. Individual Income Tax Return, which was filed with the Internal Revenue Service, reported on line 10 taxable income of $6,742 whereas, as he then and there knew, he had taxable income totaling at least $88,251, for his CPA business and from the V.L.N. Revocable Trust. The defendant acknowledges and admits that he acted

8

willfully, in violation of Title 26, United States Code, Section 7206(1). This is summarized in the table below:

|  | 2018 |
| --- | --- |
| Total Gross Receipts | $175,354.60 |
| Reported Gross Receipts | <$76,041.00> |
| **Unreported Gross Receipts** | **$99,313.60** |

Relevant Conduct. The defendant also under-reported his income and filed false Forms 1040 for the years 2019 and 2020.

|  | 2019 | 2020 |
| --- | --- | --- |
| Reported Taxable Income: | $ 38,129.00 | $ 14,976.00 |
| Corrected Taxable Income | $ 53,582.00 | $ 94,900.00 |
| **Unreported Taxable Income:** | **$ 15,453.00** | **$ 79,924.00** |
| **TOTAL Unreported:** | | **$ 176,886.00** |

Total Tax Loss. The defendant acknowledges that for the purpose of calculating his offense level under the U.S. Sentencing Guidelines, the total tax harm he caused was $59,622, as set forth in the table below:

|  | 2018 | 2019 | 2020 |
| --- | --- | --- | --- |
| Additional Tax Due & Owing | $ 28,129.00 | $ 4,218.00 | $ 27,275.00 |
| **TOTAL Additional Tax Due & Owing** | | | **$ 59,622.00** |

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory

9

sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the Information, as well as all other uncharged, related criminal activity, may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charges to which he is pleading guilty.

5. **Statutory Penalties.** The defendant understands that, upon his plea of guilty to Count 1 of the information, charging him with wire fraud, the maximum penalty the Court may impose is not more than 20 years' imprisonment, 3 years' supervised release, a $250,000 fine, an order of restitution, and a $100 mandatory special assessment per felony count of conviction, which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony.

The defendant understands that, upon his plea of guilty to Count 2 of the information, charging him with a violation of 26 U.S.C. § 7206(1), that is, making a false federal income tax return, the maximum penalty the Court may impose is not more than three years' imprisonment, a $250,000 fine, a one-year term of supervised release, an order of restitution, and a $100 mandatory special assessment per felony count of conviction, which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class E felony.

6. **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

  a.  in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

b.     the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

c.     in addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to 3 years as to Count 1, and 1 year as to Count 2;

d.     if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to 2 years as to Count 1, and up to 1 year as to Count 2, without credit for time previously spent on supervised release.  In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed 3 years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

e.     the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

f.     any sentence of imprisonment imposed by the Court will not allow for parole;

g.     the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

h.     the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court.

i.     the defendant agrees that the United States may institute civil, judicial, or administrative forfeiture proceedings against all forfeitable assets in which the defendant has an interest, and that he will not contest any such forfeiture proceedings, including in civil case number 23-03145-CV-S-SRB, and defendant agrees, upon the court ordered stay in the aforementioned case being lifted, to withdraw any and all claims in the case after entering his guilty plea and comply with any requests of the United States to effectuate such forfeiture;

j.     the defendant agrees to forfeit all interests he owns or over which he exercises control, directly or indirectly, in any asset that is subject to forfeiture to the United States, either directly or as a substitute for property that was subject to forfeiture but is no longer available for the reasons set forth in 21 U.S.C. § 853(p), which is applicable to this action pursuant to 28 U.S.C. § 2461(c), including, but not limited to, the following specific property: real property located at 1341 North Fremont Avenue, Springfield, Missouri, as fully described in the Information, and a money judgment in the amount of $415,481.50.  With respect to any asset which

11

the defendant has agreed to forfeit, the defendant waives any constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution;

k.      The defendant agrees to fully and truthfully disclose the existence, nature and location of all assets forfeitable to the United States, either directly or as a substitute asset, in which he, his co-defendants and his co-conspirators have or had any direct or indirect financial interest, or exercise or exercised control, directly or indirectly, during the period from April 2014 to the present. The defendant also agrees to fully and completely assist the United States in the recovery and forfeiture of all such forfeitable assets;

l.      the defendant agrees to take all necessary steps to comply with the forfeiture matters set forth herein before his sentencing;

m.      within ten (10) days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that the United States will use the financial information when making its recommendation to the Court regarding the defendant's acceptance of responsibility; and

n.      at the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of forfeitable assets and restitution.

7.      **Government's Agreements.**  Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against the defendant for any federal criminal offenses related to the crimes charged in the information for which it has venue and which arose out of the defendant's conduct described above.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against

12

the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that, if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

8.     **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the counts to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

13

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his pleas of guilty only if the Court rejects the plea agreement, or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that, if the Court accepts his pleas of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his pleas of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

    b. The cross reference to U.S.S.G. § 2B1.1, for Count 2 found at U.S.S.G. § 2T1.1, applies to the defendant's Sentencing Guidelines.

    c. The applicable Guidelines section for Count 1 is U.S.S.G. § 2B1.1, which provides for a **base offense level of 7;**

    d. Pursuant to U.S.S.G. § 2B1.1(b)(1)(G), **twelve (12) levels are added** because the loss exceeded $250,000;

    e. The defendant has admitted his guilt and clearly accepted responsibility for his actions, and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial a1nd permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a 3-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file

a written motion with the Court to that effect, unless the defendant: (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty pleas, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

      f.    There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

      g.    The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

      h.    The defendant understands that the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable." However, while the United States does not agree that a sentence outside the Guidelines range is appropriate, the defendant may argue for a sentence outside the Guidelines range. The agreement by the Government not to seek a departure from the Guidelines is not binding upon the Court or the United States Probation Office, and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable";

      i.    The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed and waives any right to have those facts alleged in the information. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

      j.    The defendant understands and agrees that the factual admissions contained in paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed upon Guidelines calculations contained in this agreement.

11. **Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in paragraph 10 and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12. **Change in Guidelines Prior to Sentencing.** The defendant agrees that, if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by the defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

    a.     oppose or take issue with any position advanced by the defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b.     comment on the evidence supporting the charges in the information;

    c.     oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed, and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

    d.     oppose any post-conviction motions for reduction of sentence, or other relief.

14.    **Waiver of Constitutional Rights.**    The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

a.    the right to plead not guilty and to persist in a plea of not guilty;

b.    the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

c.    the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

d.    the right to confront and cross-examine the witnesses who testify against him;

e.    the right to compel or subpoena witnesses to appear on his behalf; and

f.    the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that, by pleading guilty, he waives or gives up those rights and that there will be no trial.  The defendant further understands that, if he pleads guilty, the Court may ask him questions about the offenses to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement.  The defendant also understands that he has pleaded guilty to felony offenses and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15.    **Waiver of Appellate and Post-Conviction Rights.**

a.    The defendant acknowledges, understands and agrees that, by pleading guilty pursuant to this plea agreement, he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement,

17

except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct; and

b.      The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16.      **Financial Obligations.**  By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

a.      The Court must order restitution to the victims of the offenses to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the information which are to be dismissed and all other uncharged, related criminal activity;

b.      The defendant agrees to pay restitution of up to $415,481.50 to the V.N.L. Revocable Trust., which includes loss related to Count 1 to which he is pleading guilty and the loss from uncharged related criminal activity, pursuant 18 U.S.C. § 3663(a)(3), payable to the following address:

V.L.N. Revocable Trust

c.      The defendant agrees to pay restitution of at least $59,622 as ordered by the Court for the tax loss to the Internal Revenue Service ("IRS"), which includes the loss related to Count 2 to which he is pleading guilty and the loss related to relevant conduct, plus statutory interest calculated through the date of sentencing, pursuant to 18 U.S.C. § 3663(a)(3), said amount to be determined by the Court, payable to the following address:

IRS-RACS
Attn:  Mail Stop 6261, Restitution
333 W. Pershing Avenue
Kansas City, Missouri 64108

18

d.       The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine;

e.       The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control, directly or indirectly, including assets and property held by a spouse, nominee or other third party.  The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full;

f.       Within ten (10) days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit: (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office.  The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility;

g.       At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution;

h       The defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence;

i.       The defendant understands that a Special Assessment will be imposed as part of the sentence in this case.  The defendant promises to pay the Special Assessment of $200 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case.  The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing;

j.       The defendant certifies that he has made no transfer of assets or property for the purpose of: (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; or (3) hindering efforts of the USAO to enforce such financial obligations.  Moreover, the defendant promises that he will make no such transfers in the future; and

k.       In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the

19

estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

17. **Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19. **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that, in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal, or any leads

from such statements or testimony, shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

20. **Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys, or any other party to induce him to enter his plea of guilty.

21. **Restitution to the IRS.** The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

If the Court orders the defendant to pay restitution to the IRS for the failure to pay tax, either directly as part of the sentence or as a condition of supervised release, the IRS will use the restitution order as the basis for a civil assessment pursuant to 26 U.S.C. § 6201(a)(4). The defendant does not have the right to challenge the amount of this assessment. *See* 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor the defendant's timely

21

payment of restitution according to that schedule will preclude the IRS from immediately collecting of the full amount of restitution-based assessment, including levy and distraint under 26 U.S.C. § 6331.

The defendant is entitled to receive credit for restitution paid pursuant to this plea agreement against those assessed civil tax liabilities due and owing for the same periods for which restitution was ordered. The defendant understands and agrees that the plea agreement does not resolve the defendant's civil tax liabilities, that the IRS may seek additional taxes, interest and penalties from the defendant relating to the conduct covered by this plea agreement and for conduct relating to another time period, and that satisfaction of the restitution debt does not settle, satisfy, or compromise the defendant's obligation to pay any remaining civil tax liability. The defendant authorizes release of information to the IRS for purposes of making the civil tax and restitution-based assessments.

The defendant understands that he is not entitled to credit with the IRS for any payment until the payment is received by the IRS.

If full payment cannot be made immediately, the defendant agrees to make a complete and accurate financial disclosure to the IRS on forms prescribed by the IRS (including, but not limited to, IRS Form 433-A and Form 433-B, as appropriate), and to disclose to the IRS any and all additional financial information and financial statements provided to the probation office. The defendant also agrees to provide the above-described information to the probation office.

If the defendant makes a payment of the restitution agreed to in this plea agreement prior to sentencing, the payment will be applied as a credit against the restitution ordered pursuant to this plea agreement.

22. **No Undisclosed Terms.** The United States and the defendant acknowledge and agree that the above stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

23. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any

drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

**Teresa A. Moore**
United States Attorney

By

Dated: 4/29/2024

Patrick Carney
Assistant United States Attorney
Kansas Bar No. 20254

I have consulted with my attorney and fully understand all of my rights with respect to the offense charged in the information. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 4-29-24

Ray Leonard Marple
Defendant

I am defendant Raymond Leonard Marple's attorney. I have fully explained to him his rights with respect to the offenses charged in the information. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, Ray Leonard Marple's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 4/29/24

Joseph Passanise
Attorney for Defendant

24